M. A. FERST, Plaintiff,

v.

W. Sam EDWARDS, Administrator of the Estate of Marion H. Allen, deceased, formerly Collector of Internal Revenue, Defendant.

Mrs. H. M. FERST, Plaintiff,

v.

W. Sam EDWARDS, Administrator of the Estate of Marion H. Allen, deceased, formerly Collector of Internal Revenue, Defendant.

Civ. A. Nos. 932M, 933M.

United States District Court, M. D. Georgia, Macon Division.

March 21, 1955.

Smith, Kilpatrick, Cody, Rogers & McClatchey, Atlanta, Ga., M. E. Kilpatrick, Atlanta, Ga., of counsel, for plaintiffs.

Frank O. Evans, U. S. Atty., Macon, Ga., Andrew D. Sharpe, David A. Wilson, Jr., Sp. Assts. to the Atty. Gen., for defendant.

DAVIS, Chief Judge.

The above-captioned cases, consolidated for trial since they involve the same issues, having been tried by the Court without the intervention of a jury, the Court does hereby make the following findings of fact and conclusions of law.

### Findings of Fact

1.

The plaintiffs are individuals, residents of the State of Georgia, and the defendant is the Administrator of the Estate of Marion Allen, deceased, formerly Collector of Internal Revenue, who resided in the Middle District of Georgia.

2.

In their respective income tax returns filed for the year 1946, each of the plaintiffs claimed as a deduction in determining net income the sum of $21,780.91 as a casualty loss.

3.

The Commissioner of Internal Revenue disallowed said claimed deductions in full and determined deficiencies in income taxes against each of the plaintiffs.

4.

On May 28, 1951 the plaintiffs paid to Marion Allen, then Collector of Internal Revenue, the amount of such deficiencies and accrued interest thereon as follows:

M. A. Ferst paid a deficiency of $16,-666.22 plus interest thereon of $4,205.38;

Mrs. H. M. Ferst paid a deficiency of $13,611.01; plus interest thereon of $3,-435.01.

5.

Subsequently, on June 7, 1951 each of the plaintiffs filed with Marion Allen, then Collector of Internal Revenue, claims for refund of income taxes for the year 1946, based upon the said claimed casualty loss. No action having been taken by the Commissioner of Internal Revenue with respect to such claims for a period of six months after filing thereof, the present suits were instituted.

6.

In 1937 the plaintiffs acquired two adjoining ocean front lots on the east beach of St. Simons Island, Georgia for the purpose of constructing a personal home. Inasmuch as government geodetic surveys of said island from 1842 through 1937 showed the coastline of the island to be rising at this point the plaintiffs acquired an option on the property between the lots purchased by them and the ocean, giving them the right to acquire any additional real estate which might build up as a result of the rising coastline.

7.

Upon the two lots thus acquired the plaintiffs built a home in 1937, the front of which facing the beach was lo-

cated some 300 to 350 feet inland from the high water mark during Spring and Fall tides, the ground floor of the home being approximately four feet above such high water mark. The foundation of the home (built to simulate a ship, having three floors or decks, and being approximately 60 feet square in dimension) consisted of approximately 100 pilings driven into the earth a depth of 20 feet wherever possible, with the tops of the pilings at the ground level being framed and connected with heavy creosoted beams. The ground floor or deck of the home was a concrete floor constructed by pouring concrete into the said frames with the concrete being wire-reinforced. The cost to the plaintiffs of the lots, the construction of the home, the landscaping thereon was $54,045.09.

8.

Between the date of construction of the home in 1937 and December 31, 1945, as a result of damage to the shrubbery by high water, the plaintiffs had claimed in their income tax returns and had been allowed deductions of casualty losses of $6,932.72, so that at December 31, 1945 the basis of the property to the plaintiffs was $47,112.37.

9.

The fair market value of the said real estate and improvements thereon in January, 1946 was $35,000. The real estate and improvements thereon were appraised at this value by Adams-Cates Company in January, 1946 incident to an exclusive sales agency agreement made at that time between the plaintiffs and said Adams-Cates Company.

10.

Subsequent to the said appraisal of the property in January, 1946, and prior to September 24th of that year, unusually high waves swept in from the ocean, destroying approximately 90 feet of lawn in front of the house, and washing out all of the sand and soil from beneath the entire length of the home, to a depth of approximately six to seven feet. As a result, the chimney, as well as a considerable portion of the first floor or deck of the home collapsed. The suddenness and speed of such washing was such that during the period alone from approximately June 15th to September 24th, 1946 the high waves destroyed approximately 40 feet of the lawn immediately in front of the home and the entire 60 feet of earth from beneath the home, thus removing lawn and soil to a depth of six to seven feet for a total distance of approximately 100 feet.

11.

An architect and a contractor who inspected the premises for the plaintiffs, advised them that there was no practical or effective way to repair or restore the home; that it was an impractical and prohibitive engineering problem to try to remove the home, and that it had value only for salvage purposes.

12.

In August, 1946 at a time when the chimney and portions of the first floor had collapsed, the plaintiffs sought and received several offers for the improvements for salvage, the highest such offer being $2,500. On September 24th, plaintiffs sold the improvements on the property for $2,500, the purchaser agreeing to salvage and remove the improvements on or before March 1, 1947. On the same date, September 24, 1946, the plaintiffs granted to said purchaser for salvage an option to buy the lots for $4,500, this option being exercised early in 1947 and the lots sold for $4,500.

13.

The high waves which thus destroyed the lawn and damaged the home as above recited, were directly caused by and the result of storms, hurricanes or earthquakes at sea, namely, some very sudden, unusual, and rare circumstances.

14.

As a result thereof, the said property of the plaintiffs was damaged to the extent of $28,000, this being the difference between the fair market value ($35,000) of the real estate, including the improvements thereon in January, 1946, and the aggregate amount ($7,000) realized for

the improvements and the lots following such damage.

### Conclusions of Law

During the year 1946, the plaintiffs sustained a casualty loss of $28,000 arising from storms, hurricanes, or earthquakes. Such loss is properly deductible by them under Internal Revenue Code Section 23(e) (3), I.R.C.1939, 26 U.S.C.A. § 23(e) (3). The amount of the loss to which each of the plaintiffs is entitled in determining their respective net income for the year 1946 is $14,000.

### Judgment

Whereupon, Judgment is hereby rendered in favor of the plaintiffs and against the defendant in the following amounts:

The plaintiff, M. A. Ferst, $13,643.56 principal;

The plaintiff, Mrs. H. M. Ferst, $10,139.50 principal, together in each instance with statutory interest from May 28, 1951, and costs herein.

### Certificate of Probable Cause

Upon motion of attorneys for the plaintiffs, it being made to appear that suit was brought by plaintiffs against Marion Allen, Collector of Internal Revenue, for recovery of illegal taxes collected by said Marion Allen, Collector of Internal Revenue; and

Whereas, during the pendency of the suit said Marion Allen died and W. Sam Edwards, as Administrator of the estate of Marion Allen was substituted as party defendant in said suits; and

Whereas, as appears from the records herein judgment has been rendered against the said W. Sam Edwards, Administrator of the estate of Marion Allen in the principal amount of $13,643.56 in favor of M. A. Ferst, and in the principal amount of $10,139.50 in favor of Mrs. H. M. Ferst, plus in each instance statutory interest from May 28, 1951, together with the costs of said proceedings; and

It being made further to appear that said collection was made by said Marion Allen, Collector of Internal Revenue from the respective plaintiffs herein and that said money was in turn by said Collector paid into the Treasury of the United States in the performance of his official duties.

Now, Therefore, the Court hereby certifies that there was probable cause for the said action done by the said Marion Allen, Collector of Internal Revenue, and that he acted under the direction of the Secretary of the Treasury.